Hon. William B. Eimicke Commissioner Department of Housing and Community Renewal
By letter dated February 28, 1986, you have asked (1) whether officers, directors and employees of the Roosevelt Island Operating Corporation ("RIOC") a public benefit corporation and political subdivision of the State, are entitled to indemnification with respect to tort claims arising from the maintenance or operation of the Roosevelt Island Tramway ("Tramway") and (2) whether a consultant contractor providing services for the management and operation of the Tramway under contract with RIOC would be entitled to indemnification by the State for such claims should a provision be included in the contract calling for indemnification of the contractor by RIOC.
The authority for State indemnification in relation to RIOC is contained in section 8(1) of chapter 899 of the Laws of 1984, effective September 5, 1984, which created RIOC and prescribed its powers. Section 8(1) of chapter 899 provides in part:
 "The state shall indemnify and hold harmless the corporation[*], urban development corporation and safe affordable housing for everyone, inc., and pursuant to section seventeen of the public officers law, their respective officers, directors and employees, from and against any and all liability, claim, loss, damage, suit or judgment and any and all costs and expenses (including, but not limited to, counsel fees and disbursements) that such corporations or their officers, directors or employees may suffer or incur, whether before or after the date hereof, as a result of either (a) the development, management or operation of Roosevelt Island or (b) the performance or non-performance by the division [**] of any of its obligations or duties with respect to Roosevelt Island."
A preliminary question is whether the State's duty, created by section 8(1), to indemnify RIOC and its officers, directors and employees applies to claims arising out of the maintenance or operation of the Tramway, an aerial transportation facility which runs between Roosevelt and Manhattan Islands in the City of New York to provide a direct transportation link between the Islands.
The provisions of chapter 899 make it clear that the Legislature intended to include the maintenance and operation of the Tramway in the words "development, management or operation of Roosevelt Island," as used in section 8(1) and elsewhere in the statute. Subdivisions (c) and (d) of section 1 of chapter 899 state that the Legislature has found that:
 "(c) it is in the public interest for the urban development corporation to transfer all of its rights and obligations with respect to the development, operation and supervision of both such existing and such proposed development to a public benefit corporation which shall be under the supervision of the commissioner of housing and community renewal; and (d) it is in the public interest that such a public benefit corporation plan, design, develop, operate, maintain and manage Roosevelt Island, that such corporation have vested in it such powers as are necessary or convenient to effectuate those functions . . ."
These words indicate that the public purpose of the act was to give RIOC broad and total operating responsibility with regard to Roosevelt Island.
The Tramway franchise granted by the City of New York to the Urban Development Corporation is included in the listed obligations relating to the "development, management and operation of Roosevelt Island" to be assumed and performed by RIOC, as provided in section 4(14) of chapter 899, and the Legislature intended the indemnity provided for in section 8(1) to cover all of the obligations it mandated upon RIOC.
Therefore, the Legislature intended to include the maintenance and operation of the Tramway in the words "development, management or operation of Roosevelt Island" in section 8(1) of chapter 899.
Accordingly, in answer to question (1), by virtue of section 8(1) of chapter 899, RIOC and its officers, directors and employees are entitled to indemnity from the State for any liability, claim, loss, damage, suit or judgment and any and all costs and expenses, including counsel fees and disbursements, in tort claims arising from the management and operation of the Tramway.
With respect to officers, directors and employees of RIOC, this section 8(1) expressly subjects the indemnity right it creates to the provisions of Public Officers Law, § 17. Section 17 limits the rights to indemnity and a defense to actions arising out of alleged acts or omissions which occurred or are alleged to have occurred while the employee was acting within the scope of his public employment or duties; it prohibits indemnification for punitive or exemplary damages, fines or penalties or injury or damage resulting from intentional wrong-doing or recklessness (Public Officers Law, § 17 [2][a]), [3][a] and [c]).
With regard to question (2) concerning the indemnification rights of a contractor, the State, as sovereign, is immune from liability to any public or private entity except to the extent that its immunity is waived by the Legislature. There is no provision in section 8(1) or elsewhere in chapter 899 for the State to directly indemnify a contractor of RIOC for tort claims arising out of the maintenance or operation of the Tramway.
As stated, however, section 8(1) of chapter 899 does authorize State indemnification of RIOC in connection with claims against it arising out of the maintenance or operation of the Tramway.
RIOC has the authority to "make and execute contracts and all other instruments necessary or convenient for the exercise of its powers and functions" under chapter 899 of the Laws of 1984 (§ 4[4]). Pursuant to the statutory authority of chapter 899, RIOC has undertaken to perform the obligations of the Urban Development Corporation with respect to the maintenance and operation of the Tramway, a facility being held open for public use. RIOC, therefore, has a duty with respect to the safe maintenance and operation of the Tramway facility. Although RIOC can delegate its authority to operate and maintain a Tramway, it cannot by such delegation avoid potential liability to third parties arising out of its duty to maintain and operate the Tramway safely (Goetz v Duffy,215 N.Y. 53, 57).
Accordingly, for consideration, RIOC could promise to defend and indemnify a contractor for losses incurred as a result of tort claims arising out of the performance by the contractor and its employees of RIOC's statutory duties for the management or operation of the Tramway. Such a promise would not increase RIOC's existing exposure to liability.
You have provided this office with a copy of the existing contract between RIOC and Ropeway Engineering, P.C. ("Ropeway"), which provides for Ropeway to provide services as manager and operator of the Tramway. Section 9(b) of the contract provides that RIOC is to maintain a general liability insurance policy for $150,000,000, naming Ropeway as an additional insured as respects the maintenance, operation and management of the Tramway.
This section gives Ropeway the right to terminate the contract if the insurance is canceled and RIOC is unable to obtain another general liability insurance policy.
There would, therefore, be consideration from Ropeway in exchange for an amendment of the contract to provide for such defense and indemnification of Ropeway by RIOC in the form of Ropeway's agreement to continue performance of the contract without general liability insurance, which you state is not available at present.
If the contract were so amended and Ropeway incurred a loss for a tort claim arising out of the maintenance or operation of the Tramway, Ropeway would have a claim against RIOC for loss as "a result of the development, management or operation of Roosevelt Island" within the meaning of section 8(1) of chapter 899 of the Laws of 1984. RIOC would, therefore, be entitled to indemnification from the State on account of Ropeway's claim against it.
* As used in chapter 899, "corporation" means RIOC (L 1984, ch 899, § 2[3]).
** As used in chapter 899, "division" means the State Division of Housing and Community Renewal (L 1984, ch 899, § 2[5]).